**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------- X
              :

**ROGER SHERWOOD,**
              :

     **Petitioner,**
              :     **OPINION AND ORDER**

     **- against -**
              :     **07 Civ. 6588 (SAS)**

**RAYMOND CUNNINGHAM,**
              :

     **Respondent.**
              :
--------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/25/09

## I.   INTRODUCTION

Roger Sherwood, proceeding pro se, brings this petition for a writ of habeas corpus pursuant to section 2254 of title 28 of the United States Code ("section 2254").  Sherwood seeks release from a sentence he is now serving following his conviction on February 14, 2002, in the Supreme Court of New York, New York County.  In his Second Amended Petition ("Petition"), Sherwood claims the trial court improperly failed to honor the terms of a plea agreement in violation of his due process rights.[1]  He also claims he was denied effective assistance of counsel when the trial court reneged on its promise to keep a plea

---

[1]    *See* Petition ¶ 12A.

1

offer open for a one-week period.[2]  Finally, Sherwood claims the trial court's

violation of his constitutional rights rendered his plea involuntary.[3]

## II.   BACKGROUND

### A.   Offense Conduct

On September 12, 2000, police officers attempted to pull Sherwood

over for a traffic offense.  Once the officers began walking toward his vehicle,

Sherwood drove off.  After a car chase, which resulted in Sherwood crashing his

car, Sherwood led the police on a foot chase.  Following a struggle, the officers

eventually handcuffed Sherwood.  When he was apprehended, the officers

recovered cocaine, cash and pipes containing drug residue.  Sherwood was

indicted on several charges including possession of a controlled substance, assault,

reckless endangerment, resisting arrest and operating a vehicle while impaired.[4]

On January 4, 2001, officers again spotted Sherwood driving

erratically and attempted to pull him over.  After another car chase, which also

--------

[2]      *See id.* ¶ 12B.

[3]      *See id.* ¶ 12C.

[4]      *See* Defendant-Appellant's Brief ("App. Br."), Ex. B to 1/9/08
Declaration of Leilani Rodriguez, Assistant Attorney General, of counsel to
Andrew M. Cuomo, the Attorney General of the State of New York ("Rodriguez
Dec."), at 5-6.

resulted in Sherwood crashing his car, he was caught by the police.  Sherwood was arrested and the officers again recovered drugs.  Sherwood was indicted on an additional charge of possession of a controlled substance but rather than remanding Sherwood, the court permitted him to remain in facilities to treat drug addiction and bipolar disorder.[5]

## B.    Procedural History

### 1.    Pre-Trial Proceedings

An Indictment filed in September 2000 charged Sherwood with Criminal Possession of a Controlled Substance in the Third Degree, Assault in the Second Degree, Reckless Endangerment in the First Degree, Resisting Arrest, and Operating a Vehicle While Impaired by Drugs.[6]  A second Indictment charged Sherwood with the additional offense of Criminal Possession in the Fourth Degree.[7]

The court adjourned the case to February 21, 2001, due to Sherwood's in-patient treatment.[8]  However, on February 21, 2001, Sherwood was

---

[5]    *See id.* at 7-8.

[6]    *See id.* at 5.

[7]    *See id.* at 8.

[8]    *See id.*

still at a treatment facility.[9] On March 28, 2001, Sherwood was arraigned on the second Indictment.[10] At this time, Sherwood agreed to undergo a pre-pleading investigation (PPI) by the Department of Probation.[11] On May 16, 2001, the PPI was forwarded to the court and disclosed Sherwood's criminal history.[12] On July 23, 2001, the consolidated cases were assigned to Justice Rena K. Uviller who set August 13, 2001 for trial.[13] However, on August 13, 2001, Sherwood was not present, having been arrested in Connecticut on charges of domestic violence.[14] While waiting for defendant's return on a warrant, the entire justice system was delayed due to the events of September 11, 2001.[15]

On October 23, 2001, after Sherwood was finally produced, the court noted that there was an outstanding plea offer from the prosecution.[16] During this proceeding, the court noted its reservations about the prosecution's offer of three

---

[9]    *See id.*

[10]   *See id.*

[11]   *See id.* at 9.

[12]   *See id.*

[13]   *See id.* at 9-10.

[14]   *See id.* at 10.

[15]   *See id.*

[16]   *See id.* at 11.

4

to six years as being too low.[17]  Also during this proceeding, Sherwood's counsel

indicated his intention to file a *Clayton* motion, a motion which the court did not

think was appropriate.[18]  Nevertheless, the court allowed defense counsel until the

next morning to submit his *Clayton* motion and adjourned the case for one week,

until October 30, 2001.[19]  During this time, the prosecutor's plea offer of three to

six years remained open.

On October 30, 2001, before the proceeding began, the court

indicated it would no longer permit Sherwood to accept the plea offered by the

prosecution.  The court noted that Sherwood was not entitled to a *Clayton*

dismissal and that if Sherwood wanted to plead guilty, the sentence would have

to be six to twelve years.  Defense counsel urged the court to maintain the original

offer, but to no avail.  The case was then adjourned for trial.[20]

When the case came before the court again on December 5, 2001,

Sherwood's new counsel again attempted to persuade the court to reinstate the

---

[17]     *See id.*

[18]     *See id.* at 11-12.  A *Clayton* motion is a motion by a defendant to
dismiss pending criminal charges in the interests of justice pursuant to C.P.L. §
210.40.  *See People v. Clayton*, 342 N.Y.S.2d 106 (2d Dep't 1973).

[19]     *See* App. Br. at 12.

[20]     *See id.* at 13-16.

original offer but the court refused.[21]  The trial was set for December 10, 2001.[22]

On December 10, 2001, defense counsel requested a one-day adjournment to make

one more effort at reinstating the original plea offer.[23]  On December 11, 2001, the

court heard defense counsel's arguments but ultimately rejected them.[24]  The trial

was then adjourned to February 14, 2002.[25]  Prior to that date, defense counsel

submitted a motion pursuant to Article 78 requesting that the trial court be ordered

to reinstate the initial plea offer.[26]  The Article 78 proceeding was dismissed on

February 13, 2002.[27]

### 2.    Plea and Sentencing

On February 14, 2002, the day trial was scheduled to begin, the court

gave Sherwood one last opportunity to accept the six to twelve year plea offer

---

[21]    *See id.*

[22]    *See id.* at 19.

[23]    *See id.*

[24]    *See id.* at 19-25.

[25]    *See id.* at 25.

[26]    *See* Petitioner's Reply to Respondent's Memorandum of Law in
Support of Motion to Dismiss Habeas Corpus Petition ("Petitioner's Reply") at 5.

[27]    *See id.*

rather than go to trial.[28]  Defense counsel attempted to persuade the court to offer

four and one-half to nine years instead but the court refused.[29]  Sherwood accepted

the plea and requested immediate sentencing since the court already had the PPI.[30]

The court complied with Sherwood's request and he was sentenced in accordance

with the plea agreement following a plea colloquy.[31]

During the colloquy, Sherwood acknowledged his guilt.[32]  He also

indicated that he discussed the decision to plead guilty with counsel and

understood the rights he was giving up.[33]  During the plea colloquy, Sherwood

questioned the court concerning the pending charges, the original plea offer, and

its familiarity with his objection to the withdrawal of the original plea offer, all of

which were answered by the court.[34]  Ultimately, Sherwood pled guilty to Class B

and Class C felonies and the court imposed a sentence of six to twelve years on

---

[28]     *See* App. Br. at 25.

[29]     *See id.* at 26.

[30]     *See id.*

[31]     *See* State Court Proceedings, Defendant-Appellant's Appendix
("Appendix"), 2/14/02 Plea and Sentence Transcript ("Plea Tr.") at 21-22.

[32]     *See id.* at 12.

[33]     *See id.* at 13.

[34]     *See id.* at 15, 17.

7

each count to run concurrently.[35]

### 3. Appeal

Sherwood appealed his conviction to the Appellate Division, First Department, arguing that the trial court denied Sherwood the right to effective assistance of counsel by reneging on the three to six year plea offer after granting a one-week adjournment and that, in any event, Sherwood's sentence of six to twelve years was harsh and excessive.[36] On April 11, 2006, the Appellate Division affirmed the conviction, stating "Defendant was not entitled to specific performance of the court's plea offer in which it had promised a sentence of 3 to 6 years."[37] The Appellate Division also noted that "[e]ven if defendant had accepted this disposition when it was first offered, he would have had no right to specific performance."[38] On May 16, 2006, Sherwood petitioned the Court of Appeals for leave to appeal,[39] which was denied on June 23, 2006.[40]

---

[35] *See* App. Br. at 26.

[36] *See id.*

[37] Decision and Order of the Supreme Court, Appellate Division, First Department ("App. Decision"), Ex. C to Rodriguez Dec., at 34.

[38] *Id.*

[39] *See* 5/16/06 Request to Appeal to the Court of Appeals, Ex. D to Rodriguez Dec.

[40] *See* 6/23/06 Certificate Denying Leave, Ex. E to Rodriguez Dec.

## III.  LEGAL STANDARD

### A.  Section 2254

#### 1.  Standard of Review

Section 2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), provides that a federal court may hear a petition

for habeas corpus relief from a state prisoner only "on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."[41]

The statute further provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States.[42]

A state court's decision is "contrary to" federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme

---

[41]  28 U.S.C. § 2254 (a).

[42]  28 U.S.C. § 2254 (d).

9

Court] has on a set of materially indistinguishable facts."[43]  A decision is an

"unreasonable application of" federal law if "the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably

applies that principle to the facts of the prisoner's case."[44]

### 2.    Statute of Limitations

Under section 2244(d)(1) of title 28 of the United States Code, a state

prisoner must file a habeas petition in federal court within one year from the date

his conviction becomes final.  The limitations period runs from the "date on which

the judgment became final by the conclusion of direct review or the expiration of

the time for seeking such review."[45]  Because New York defendants may seek

certiorari review before the United States Supreme Court within ninety days of

denial of leave to appeal by the New York Court of Appeals, the limitations period

usually begins to run ninety days after denial of leave to appeal by the New York

Court of Appeals.[46]

---

[43]    *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority as to Part II of the opinion).

[44]    *Id.*

[45]    28 U.S.C. § 2244(d)(1).

[46]    *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citing Sup. Ct. R. 13).

The one-year limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[47]  In addition, the one-year limitations period is not jurisdictional and may be tolled for equitable reasons in "rare and exceptional circumstances."[48]

### 3.    Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[49]  In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[50] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[51]  In New York, a

---

[47]    28 U.S.C. § 2244(d)(2).

[48]    *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001).

[49]    28 U.S.C. § 2254(b)(1)(A).

[50]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[51]    *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney General*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

prisoner may exhaust a claim not raised on appeal through collateral proceedings, such as an application for a writ of error coram nobis.[52]  Whether on direct appeal or in a collateral proceeding, the claim must be presented to "the highest state court from which a decision can be had."[53]

Prior to AEDPA, district courts were required to dismiss any petition containing unexhausted claims.[54]  Under the AEDPA amendments, however, district courts have the discretion to deny a petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."[55]  No standard has been established in the Second Circuit to guide district courts in the exercise of this discretion, but many district courts have chosen to deny unexhausted claims that are "patently frivolous."[56]  The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than

---

[52]     See, e.g., Figueroa v. Portuondo, 96 F. Supp. 2d 256, 276 (S.D.N.Y. 1999) (citing Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981); Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979)).

[53]     Daye, 696 F.2d at 190 n.3.

[54]     See Rose v. Lundy, 455 U.S. 509, 522 (1989).

[55]     28 U.S.C. § 2254(b)(2).

[56]     Naranjo v. Filion, No. 02 Civ. 5549, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (collecting cases).  The court in Naranjo noted that the Second Circuit has applied the "patently frivolous" standard where appropriate. See id. at *8 n.14.

dismissed for failure to exhaust.[57]  The Third, Fifth and Ninth Circuits have held

that section 2254(b)(2) embodies the Supreme Court's pre-AEDPA holding in

*Granberry v. Greer* that a court may deny an unexhausted claim on the merits if it

is "perfectly clear that the applicant does not raise even a colorable federal

claim."[58]

### 4.    Procedural Bar

As a matter of federalism, federal courts may not review a habeas

claim if it was defaulted in state court pursuant to an independent and adequate

state procedural rule.[59]  This rule extends to habeas review the standard applicable

on direct review, and allows "state courts . . . to address those claims in the first

instance."[60]  In order for a claim to be barred from habeas review, the state court

---

[57]     *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of section 2254's grant of discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

[58]     481 U.S. 129, 135 (1987).  For cases adopting this standard, *see Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005); *Jones v. Morton*, 195 F.3d 153, 156 n.2 (3d Cir. 1999) ("[section] 2254(b)(2) is properly invoked only when it is perfectly clear that the applicant does not raise even a colorable federal claim); *Mercadel v. Cain*, 179 F.3d 271, 276 n.4 (5th Cir. 1999) ("[W]e cannot say that it is perfectly clear that the applicant does not raise even a colorable legal claim, and denial of relief under §2254(b)(2) is therefore inappropriate.").

[59]     *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[60]     *Id*. at 732.

13

"must actually have relied on the procedural bar as an independent basis for its disposition of the case."[61]

In general, for a habeas claim to be procedurally barred, reliance on the state procedural rule must be "clear from the face of the opinion."[62]  Because the basis for a state court decision is often unclear, the Supreme Court held in *Harris v. Reed* that federal courts may review a habeas petition when the state court decision "fairly appears to rest primarily upon federal law, or to be interwoven with the federal law."[63]  In *Coleman v. Thompson*, however, the Supreme Court declined to establish a per se presumption that a decision was based on federal law when a petitioner had presented federal claims to a state court, holding instead that the *Harris* presumption – a presumption in favor of federal review after it is determined that the relevant state court decision relies on federal law – does not apply to affirmances without opinion unless there is "good reason to question whether there is an independent and adequate state ground for the decision."[64]

---

[61]    *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal citations omitted).

[62]    *Coleman*, 501 U.S. at 735.

[63]    *Harris*, 489 U.S. at 261.

[64]    *Coleman*, 501 U.S. at 739.

If the state court holding contains a statement that a claim is procedurally barred, but reaches the merits in the alternative, habeas review is inappropriate;[65] in contrast, if the state court uses language such as "the claims are either unpreserved or without merit," the claims are subject to federal court review.[66] Finally, if the state court issues no opinion and both procedural and substantive arguments are made in the briefs, the Second Circuit has held that the decision is presumed to be on state procedural grounds.[67]

Even if a petitioner's claims are procedurally barred under state law, he may still obtain habeas review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[68]

## B.   Violation of Due Process

While pleas are commonplace in criminal matters, there is "no

---

[65]   *See Harris*, 489 U.S. at 264 n.10.

[66]   *See Jimenez v. Walker*, 458 F.3d 130, 133 (2d Cir. 2006).

[67]   *See id*. at 139-40.

[68]   *Coleman*, 501 U.S. at 750.

constitutional right to plea bargain."[69]  Further, even when the parties may work

out an agreement in principle, "there is no absolute right to have a guilty plea

accepted."[70]  If a court finds rejection of the plea to be in the exercise of sound

discretion, it may do so,[71] especially when it notes the reasons it has for rejecting

the agreement.  This is true even when a court may have already accepted a plea.[72]

Provided a defendant has not detrimentally relied on the agreement, a court may

revoke a plea or decline to sentence in accordance with a plea before[73] or even

after accepting the plea.[74]  In the latter case, the court must provide the defendant

the opportunity to withdraw the plea, restoring him to the position he was in

before the plea was accepted.[75]

      Additionally, sentencing decisions are within a court's discretion.  A

---

[69]    *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

[70]    *Santobello v. New York*, 404 U.S. 257, 262 (1971).

[71]    *See id.*

[72]    *See New York v. Schultz*, 73 N.Y.2d 757, 758 (1998)  (noting that "[t]he court . . . retains discretion in fixing an appropriate sentence up until the time of the sentencing.").

[73]    *See United States v. Severino*, 800 F.2d 42, 46 (2d Cir. 1987).

[74]    *See Schultz*, 73 N.Y.2d at 758.

[75]    *See id.*

plea is not coerced because the court has changed its mind regarding sentencing

before the plea has been accepted, nor does a broken promise constitute a basis for

rendering the plea involuntary unless the "guilty plea [was] induced by a broken

promise as to sentence."[76] Further, a defendant only acts in detrimental reliance on

a plea when he has changed his position in a way that it cannot be undone.[77] This

does not include simply having to choose between accepting a plea or proceeding

to trial. Rather, it refers to matters such as a defendant testifying in accordance

with an agreement or acting as a cooperating witness in such a way that

withdrawing the plea would not be enough and "specific performance of the

promise might be the only alternative which in [sic] justice could be applied."[78]

Finally, a guilty plea forecloses claims regarding violations of a

defendant's rights prior to entry of the plea.[79] Thus, after a plea is accepted, the

only issue regarding an alleged due process violation is whether the plea was

involuntary.

## C.    Denial of Effective Assistance of Counsel

---

[76]    *Mosher v. LaVallee*, 351 F. Supp. 1101, 1105 (S.D.N.Y. 1972).

[77]    *See New York v. McConnell*, 49 N.Y.2d 340, 346-47 (1980).

[78]    *Id.* at 347.

[79]    *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

17

The Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence."[80] Included in that guarantee is the right to effective assistance of counsel.[81] The Supreme Court established the standard for ineffective assistance of counsel in *Strickland v. Washington*, which held that a petitioner must prove both (1) that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[82]

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case."[83] A defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[84]

---

[80]   U.S. Const. amend. VI.

[81]   *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (collecting cases).

[82]   *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[83]   *Id.* at 689, 690.

[84]   *Id.* at 698 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Finally, when a defendant who is represented by new counsel pleads guilty, the plea forecloses claims against his prior counsel.[85] A guilty plea also forecloses claims of ineffective assistance of counsel for actions an attorney took prior to the plea that did not affect the voluntariness of the plea.[86] A trial court's rejection of a plea is not the fault of the attorney nor is it a denial of a defendant's right to effective assistance of counsel.[87]

## D.    Involuntary Plea

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."[88] Accordingly, "only when it develops that the defendant was not fairly apprised of the consequences can his plea be challenged under the Due Process Clause."[89]

Therefore, prior to accepting a plea, a trial court must establish that

---

[85]    *See United States v. Coffin*, 76 F.3d 494, 498 (2d Cir. 1996).

[86]    *See Tollett*, 411 U.S. at 266-67.

[87]    *See Mabry v. Johnson*, 467 U.S. 504, 510 (1984).

[88]    *Id.* at 508.

[89]    *Id.* at 509.

the plea is knowing and voluntary.[90]  A plea "entered by one fully aware of the

direct consequences, including the actual value of any commitments made to him

by the court, prosecutor, or his own counsel, must stand unless induced by threats

[], misrepresentation [], or perhaps by promises that are by their nature improper as

having no proper relationship to the prosecutor's business []."[91]  A plea is not

involuntary because a defendant must choose between two unpleasant options.[92]

## IV.    DISCUSSION

### A.    Denial of Due Process

Sherwood claims that his "right to due process was violated when the

trial court refused to honor the terms of a dispositional agreement, which the court

constructed within it's [sic] authority and the petitioner relied upon in acting to his

own detriment."[93]  Although Sherwood did not specifically claim in his direct

appeal that his right to due process was violated, the claim is substantially similar

to an issue he did raise on direct appeal – that the trial court's actions were

---

[90]    *See Boykin v. Alabama*, 395 U.S. 238 (1969); Fed. R. Crim. P. 11(c).

[91]    *Brady v. United States*, 397 U.S. 742, 755 (1970) (citation omitted).

[92]    *See United States ex rel. Delman v. Butler*, 390 F. Supp. 606, 609 (E.D.N.Y. 1975).

[93]    Petition ¶ 12A.

arbitrary and capricious.[94]   Accordingly, Sherwood has satisfied the exhaustion requirement with respect to this claim.

Although Sherwood may believe he was entitled to the plea bargain the prosecution originally offered, this is simply not the case.  Additionally, the trial court was not required to accept the plea bargain even if Sherwood had agreed to it on or before October 23, 2001.  Further, on October 23, 2001, the trial court expressed its concern that the offer was too low,[95] which put Sherwood on notice that even if the court did accept the initial plea, the court may have elected to give him a different sentence.  The court also noted its reasons for changing its mind.[96] Accordingly, despite Sherwood's apparent belief that courts should not have the discretion to reject a plea offer, they do have that discretion.  Indeed, the appellate court here found that the trial court acted within its discretion.[97]

Also, Sherwood's claim that he detrimentally relied on what he perceived to be a promise by the court is unfounded.  The October 23, 2001 transcript clearly indicates that defense counsel intended to make a *Clayton*

---

[94]     *See* App. Br. *passim*.

[95]     *See* Appendix, 10/23/01 Proceedings Transcript at 2.

[96]     *See* Appendix, 10/30/01 Proceedings Transcript at 2.

[97]     *See* App. Decision at 34.

motion independent of the one-week adjournment.[98]  Even if the decision to file

the *Clayton* motion were related to the one-week adjournment, Sherwood did not

change his position during this time.  The *Clayton* motion merely reiterated facts

already known to the court in an attempt to garner sympathy for the defendant in

the hope of receiving a non-custodial sentence in the form of rehabilitation.[99]  The

motion did not admit to any crimes; indeed, it specifically stated that "[i]n making

this motion, we will assume *arguendo* that the evidence . . . is substantial."[100]  This

meant that Sherwood was *not* admitting his guilt.  Accordingly, had Sherwood

gone to trial, the State still needed to meet its burden of proof as to whether there

was sufficient evidence to sustain a conviction.  As such, the court's withdrawal of

the plea offer merely restored Sherwood to the position he was otherwise in – he

could take the new plea offered by the court or proceed to trial.

Finally, Sherwood waived his claims to violations, such as his claim

---

[98]     *See* Appendix, 10/23/01 Proceedings Transcript at 3.  "[T]he Court
has been apprised . . . of his medical condition.  Because of that, I've been in
preparation of a motion (referring to the Clayton Motion) that the Court needs to
see . . . to understand his predicament more fully, specially [sic] in light of the
time; you think the offer is too low."  *Id.*

[99]     *See* Appendix, Memorandum of Law in Support of Defendant Roger
Sherwood's Motion to Dismiss the Charges Against Him in the Interests of Justice
Pursuant to C.P.L. § 210.40 at 2-3.

[100]     *Id.* at 10.

that the court's involvement in plea bargaining was fundamentally unfair, that may have occurred prior to the guilty plea, when he elected to plead guilty. After the trial court indicated it would not accept the initial plea offer, it stated that it would accept a plea of six to twelve years.[101]   Sherwood then had several months to consider this offer. In the meantime, his attorney presumably prepared for trial. In fact, Sherwood pled guilty on the same day the trial was to begin. Sherwood cannot now claim he was denied due process because he did not like the terms of the plea offer he accepted.

## B.   Denial of Effective Assistance of Counsel[102]

Sherwood also claims that his "right to effective assistance of counsel was violated when the trial court reneged on its promise to keep open the court accepted plea and sentence offer . . . during a one week adjournment."[103] Sherwood raised this exact issue on direct appeal but the court did not specifically address it, instead affirming the conviction on other substantive grounds.[104]

---

[101]    *See* Appendix, 10/30/01 Proceedings Transcript at 3.

[102]    Sherwood acknowledged several of his ineffective assistance of counsel claims were not exhausted and agreed to their dismissal. *See* this Court's 8/6/08 Order.

[103]    Petition ¶ 12B.

[104]    *See* App. Decision.

23

Accordingly, this claim is exhausted.

Contrary to Sherwood's assertion, the trial court never accepted the initial plea.[105] In fact, Sherwood never came close to accepting that plea. He never entered into an agreement with the prosecution, nor did he inform the court he wanted to accept the plea. It was only after the trial court indicated it would no longer accept the prosecutor's offer that Sherwood asserted his intention to accept the plea.[106] Even assuming he did intend to take the plea when he came to court on October 30, 2001, the court stated it would not accept the plea.[107] As such, Sherwood's claim that the court had accepted the plea is plainly wrong.[108]

In any event, Sherwood's argument that the trial court's actions deprived him of his right to counsel are without merit. Petitioner had counsel at each and every proceeding. Indeed, at several points, he had multiple attorneys working on his behalf.[109] When he became displeased with one attorney, he hired

---

[105]    *See* Appendix, 10/30/01 Proceedings Transcript at 5.

[106]    *See id.* at 6-7.

[107]    *See id.* at 2.

[108]    *See* 1/25/08 Petitioner's Reply at 2.

[109]    *See* Appendix, Proceedings Transcripts *passim.* Sherwood was represented by Mr. Franz, Mr. Tocopina, and Mr. Weiner.

24

another, which substitution the court allowed.[110]  Sherwood was given ample time

to consult his attorneys, with the court granting several adjournments, over a

period exceeding one year.

Sherwood's claim that October 23, 2001 retroactively became a

"critical stage" is incorrect.[111]  In fact, on that date he indicated a desire to file a

*Clayton* motion and failed to express even the slightest interest in accepting the

plea.[112]  This was a calculated strategy defendant undertook in order to avoid a

prison sentence.  Simply because the court changed its mind in the interim does

not mean that Sherwood was deprived of his right to counsel at his plea

proceeding.  Sherwood was vigorously represented and the court acknowledged

his attorney's efforts on his behalf.[113]  In short, there is no basis to Sherwood's

claim that he was denied effective assistance of counsel.

### C.    Involuntary Plea

Sherwood's final claim is that "[t]he trial court's violation of the

---

[110]     *See* Appendix, 12/5/01 Proceedings Transcript at 2.  The court
allowed the substitution of Mr. DeMatteo to replace Sherwood's former attorneys.

[111]     *See* 1/25/08 Petitioner's Reply at 2.

[112]     *See* Appendix, 10/23/01 Proceedings Transcript at 3.

[113]     *See* Plea Tr. at 13.  "THE COURT: He's been representing you very
ably for a long time."

25

petitioner's constitutional rights during plea negotiations rendered his plea involuntary."[114] This claim was not raised on direct appeal, nor were the statements made or issues raised in the appeal sufficient to put the appellate court on notice of this claim. Sherwood argues that raising this claim would have been futile and he is therefore not required to satisfy the exhaustion requirement as to this claim.[115] Because there is no basis supporting the futility argument, exhaustion is required.

### 1.  Exhaustion

In any event, this unexhausted claim can be denied on the merits. The claim is plainly without merit and patently frivolous because none of the facts Sherwood alleges rise to the level of a constitutional violation.[116]

### 2.  Procedural Bar

Further, even if this Court were willing to consider the argument that Sherwood's plea was involuntary, the claim is procedurally barred. Section

---

[114]    Petition ¶ 12C.

[115]    *See* Petitioner's Supplemental Reply to Respondent's Supplemental Memorandum of Law in Support of Motion to Dismiss Petition for Habeas Corpus at 3.

[116]    *See Hammock v. Walker*, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002) (addressing merits of ineffective assistance of trial counsel claim although petitioner did not exhaust claim by filing a motion to vacate under section 440.10).

440.10(2)(c) of the Criminal Procedure Law requires a court to deny motions to vacate brought under this section when, "[a]lthough sufficient facts appear on the record" to permit review on appeal, "no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . [or] to raise such ground or issue upon an appeal actually perfected by him."[117] This provision bars Sherwood from raising his involuntary plea claim based on facts within the record.  Further, Sherwood has made no attempt to establish cause for the default and actual prejudice or that the failure of this Court to consider the claim will result in a fundamental miscarriage of justice because he is actually innocent.

### 3.    The Plea was Knowing, Intelligent and Voluntary

Sherwood's in-court statements, made during his plea colloquy and on the record, undermine his current claim that he did not voluntarily agree to the plea.[118]  He acknowledged that he knew the rights he was waiving.[119]  He knew the charges he faced, the sentence he faced, and the court's objection to the prior plea

---

[117]    N.Y.C.P.L. § 440.10(2)(c).

[118]    *See* Plea Tr. at 12-18.  "THE COURT: Has anyone forced you or threatened you in any way to get you to enter into these pleas?  THE DEFENDANT: No."  *Id.* at 17.

[119]    *See id.* at 13.

offer.[120] He indicated he had been afforded sufficient time to speak with his attorney about the offer.[121] He also had time to prepare for trial and decided that he did not want to proceed to trial given his exposure if found guilty.

Sherwood participated in a lengthy plea colloquy by asking questions and acknowledging his understanding of the outcome and consequences.[122] The fact that he did not like the choice between the plea offered by the court and proceeding to trial does not mean that his constitutional rights were violated or that anything improper occurred. Sherwood's claim that his plea was involuntary is directly contradicted by his own statements and the record.

### D.    Certificate of Appealability

A district court may grant a certificate of appealability allowing a habeas petitioner to appeal the denial of his petition with respect to any of petitioner's claims only if petitioner makes a substantial showing of the denial of a constitutional right.[123] A substantial showing requires only that a petitioner demonstrate "reasonable jurists could debate whether . . . the petition should have

---

[120]    *See id.* at 14-17.

[121]    *See id.* at 13.

[122]    *See id.* at 12-18.

[123]    *See* 28 U.S.C. § 2253(c)(2). *See also Miller-El v. Cockrell*, 537 U.S. 322 (2003).

28

been resolved in a different manner or that the issues presented were 'adequate to

deserve encouragement to proceed further.'"[124]  Because Sherwood has not made

such a showing here, I decline to issue a certificate of appealability.[125]

## V.    CONCLUSION

For the above reasons, Sherwood's petition for a writ of habeas

corpus is denied.  The Clerk of the Court is directed to close this petition and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          March 24, 2009

---

[124]    *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted)).

[125]    *See* 28 U.S.C. § 2253(c)(2).

## - Appearances -

**Petitioner (Pro Se):**

Roger Sherwood
# 02-A-1335
Woodbourne Correctional Facility
P.O. Box 1000
Woodbourne, NY 12788

**For the Respondent:**

Leilani Rodriguez
Assistant Attorney General
120 Broadway
New York, N.Y. 10271
(212) 416-8871